## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JANE DOE H, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 2:16-cv-02727 |
| | ) |
| HASKELL INDIAN NATIONS UNIVERSITY, | ) |
| | ) |
| and | ) |
| | ) |
| the UNITED STATES OF AMERICA, | ) |
| | ) |
| and | ) |
| | ) |
| SALLY JEWELL, in her official capacity, | ) |
| as U.S. SECRETARY OF THE INTERIOR, | ) |
| | ) |
| and | ) |
| | ) |
| ELYSE TOWEY, in her individual capacity, | ) |
| TONIA SALVINI, in her individual capacity, | ) |
| and VENIDA CHENAULT, in her individual | ) |
| capacity, | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT WITH JURY DEMAND

Comes Now Plaintiff Jane Doe H, and for her causes of action against Defendants Haskell Indian Nations University, the United States of America, and Sally Jewell, in her official capacity as Secretary of the U.S. Department of Interior, and Elyse Towey, Tonia Salvini and Venida Chenault in their individual capacities, states as follows:

### Jurisdiction and Venue

1.     Plaintiff alleges violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), the Rehabilitation Act of 1973, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

1

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 and 1346(b).

3. Venue is proper with this Court pursuant to the provisions of 28 U.S.C. §1391(b) as the acts alleged in this Complaint were committed within this Judicial District.

4. Plaintiff currently has administrative claims arising under the Federal Tort Claims Act of 1948, 28 U.S.C. §2671 and Kansas common law pending against defendants arising out of the same conduct. If necessary, Plaintiff will ask the Court leave to formally amend the claims into the present lawsuit after the 180-day consideration period concludes. The facts that support the FTCA claims, as well as the causes of action, have been pleaded in the present lawsuit under "Background Facts."

**Parties**

5. Plaintiff Jane Doe H, whose true name will be provided to defendants, and who currently resides in the State of Oklahoma, was at all relevant times a student and former student at Defendant Haskell Indian Nations University.

6. Defendant Haskell Indian Nations University (hereinafter "HINU"), is located in Douglas County, Kansas. HINU is a recipient of federal financial assistance and is operated by Defendant United States of America (hereinafter "USA") through the Department of the Interior. HINU's administrative office is located at 155 E. Indian Ave, Lawrence, KS 66046. HINU may be served via Certified Mail to the civil process clerk at the office of the United States attorney for the district in which the action is brought (Tom Beall, U.S. Attorney's Office, 500 State Ave., Suite 630, Kansas City, KS  66101) and to the Attorney General of the United States at Washington, D.C. (The Office of the Attorney General, 950 Pennsylvania, NW, Washington, D.C. 20530).

7.      Defendant USA, by and through the Department of the Interior, operates HINU. Defendant USA may be served in the same manner as Defendant HINU.

8.      Sally Jewell, U.S. Secretary of the Department of Interior, is sued in her official capacity. Defendant Jewell may be served in the same manner as Defendant HINU, with the addition of service via certified mail upon Defendant Jewell.

9.      Elyse Towey is Defendant HINU's Title IX coordinator, and she can be served at 2347 Massachusetts Street, Lawrence Kansas, 66046-4825. She is sued in her individual capacity.

10.     Tonia Salvini was vice-president of university services, and she can be served at 2120 Vermont Street, Lawrence Kansas, 66046-3064. She is sued in her individual capacity.

11.     Venida Chenault is the HINU president, and she can be served at 637 N. 8th Street, Lawrence Kansas 66044-5372. She is sued in her individual capacity.

12.     Towey, Salvini and Chenault will be referred to collectively as "Individual Defendants."

**Background Facts**

13.     Fed.R.Civ.P. 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The following pleaded facts are not exhaustive; they are selected for inclusion in this complaint with the aim of making this complaint "short and plain" yet detailed enough to show that her claim is plausible under Title IX and the Federal Tort Claims Act.

14.     At all relevant times, all officers, agents and employees of Defendants were acting within their scope of employment.

15.     In the Fall of 2014, Plaintiff enrolled in HINU as a freshman and moved from her family home in Oklahoma to live in dormitories operated by HINU.

16.     In November of 2014, Plaintiff was sexually assaulted by two male HINU football players at a HINU dormitory.

17.     Prior to the assaults, HINU employees knew that policies against use of alcohol and curfew hours were not being enforced.

18.     A criminal investigation immediately ensued and charges were filed against the two assailants.

19.     Plaintiff strove to continue as a HINU student while cooperating with the Douglas County, Kansas, prosecutor's office as the complaining witness in the two criminal cases against her assailants.

20.     Defendants knew Plaintiff had developed a medical/psychological condition that interfered with her ability to complete her courses as a result of the rapes.

21.     The assaults caused her extreme emotional distress. The ongoing demands of the criminal proceedings also took a toll upon Plaintiff – the criminal trials were each postponed several times by many months, with each delay delivering more emotional turmoil to Plaintiff and prolonging the stress she faced and rendering her suicidal at times.

22.     In order to assist and accommodate Plaintiff, in November of 2014 HINU initially assigned HINU counselor Angelina Adams to provide counseling and support to Plaintiff, and made other accommodations during the school year. Angelina Adams provided counseling and support to Plaintiff until approximately March of 2016.

23.     Plaintiff re-enrolled in HINU for the 2015-2016 school year.

24.     In January of 2016, HINU President Chenault's son, Joshua Arce, was appointed to serve as Dean of Students, overseeing student rights, conduct, housing and counseling services.

25.     On March 31, 2016, Plaintiff was involved in a dispute with a male HINU student ("John Doe") at a HINU dormitory in which the male student left bruises on her arms. Plaintiff was transported to a medical facility.

26.     Upon information and belief, HINU officials pressured John Doe to file an unfounded Title IX complaint against Plaintiff that left key details out of the complaint.

27.     HINU officials knew that pictures had been taken of the bruises left on Plaintiff's arms by John Doe, and that John Doe had sent text messages suggesting that HINU officials were forcing him to press a complaint against Plaintiff.

28.     On April 1, 2016, HINU administrators faxed Plaintiff a "no contact" order while she remained at the medical facility.

29.     According to HINU's Standard Operating Procedures for Sexual Violence and Abuse, Sex Discrimination and Sexual Harassment then in effect, Plaintiff had the "right to due process. Every student is entitled to due process in every instance of disciplinary action for alleged violation of school regulations for which the student may be subjected to sanctions of suspension, expulsion, or transfer."

30.     Those same due process rights included:

   a.   Written notice of charges within a reasonable time before a hearing;

   b.   A fair and impartial hearing before the imposition of disciplinary action;

   c.   The right to representation;

   d.   The right to produce witnesses and to examine witnesses;

     e.   The right to a record of proceedings;

     f.   The right to administrative review and appeal;

     g.   The right to expunge misconduct allegations if found not guilty.

31.     The same due process rights provide that HINU may only temporarily suspend a student even if they legitimately believed the student poses a danger to other students.

32.     On or about the afternoon of April 1, 2016, HINU administrators expelled Plaintiff and banned her from campus without conducting an investigation or providing Plaintiff any due process.

33.     HINU administrators then sought to avoid post-decisional due process by attempting a constructive expulsion, telling Plaintiff she would be expelled that day if she did not withdraw, while continuing to ban her from campus.

34.     HINU administrators denied her all of the due process provisions provided for under HINU's policies, even though they had no discretion to do so.

35.     HINU administrators were deliberately indifferent to Plaintiff's Title IX rights, intentionally circumventing her rights in order to kick her out of the university, and intentionally pressured John Doe to bring a baseless Title IX complaint against Plaintiff in order to get rid of her.

36.     HINU administrators had no discretion to pervert the Title IX process by prodding a student to make a baseless complaint against Plaintiff and then effectively expel her without due process.

37.     That same day, HINU immediately began retaliating against Counselor Adams for assisting Plaintiff and advocating for her Title IX rights. On or about April 3, 2016, HINU instructed Counselor Adams to have no more contact with Plaintiff.

38.     Plaintiff has a clearly defined protected right to privacy in her health and education records under the Health Insurance Portability and Accountability Act ("HIPPA") and Family Educational Rights and Privacy Act ("FERPA").

39.     Moreover, HINU policies and regulations recognize that its students possess privacy rights.

40.     In June of 2016, the first criminal trial involving Plaintiff occurred. Upon information and belief, during that trial, HINU administrators provided the criminal attorney for Plaintiff's assailant with copies of her education and medical records without being compelled by a subpoena and without notice to Plaintiff. The defense relied on information gleaned from these records, and the trial resulted in a hung jury.

41.     In July of 2016, a second criminal trial began occurred involving Plaintiff's second assailant, and HINU again prepared to release Plaintiff's private education and counseling records without notice to Plaintiff. The second criminal trial also resulted in a hung jury.

42.     Defendants' deliberate willingness to violate Plaintiff's privacy rights, ignore Defendants' own policies, and violate clearly applicable federal laws further exhibits Defendants' deliberate indifference to Plaintiff's Title IX rights.

43.     Defendants' expulsion and/or constructive expulsion of Plaintiff denied her an educational opportunity.

44.     Defendants' constructive expulsion of Plaintiff  and denial of her due process rights constituted retaliation against Plaintiff for engaging in activity protected by Title IX, including trying to attend school as a sexual assault victim actively involved in two ongoing

criminal trials against Defendants' football players and defending herself against an unfounded accusation made at Defendants' urging.

45. Defendants' disclosure of Plaintiff's records represented a retaliatory act.

46. Individual Defendants, at all relevant times acting under color of federal law, deliberately caused a baseless Title IX complaint to be lodged against Plaintiff by a male HINU student in order to kick Plaintiff out of HINU.

47. Individual Defendants first sought to expel Plaintiff without due process and without legitimate basis.

48. Defendants Salvini and Chenault then directed Defendant Towey to instruct Plaintiff, immediately upon her return from a medical facility, that she must either withdraw or be expelled immediately from HINU.

49. Individual Defendants deliberately acted to deny Plaintiff due process by removing her from the university and housing without providing her a hearing, an opportunity to confront her accuser, bring witnesses, or present evidence, as detailed in the HINU Student Handbook Code of Student Conduct and U.S. Department of Interior regulations.

50. Individual Defendants engaged in this conduct despite knowing physical evidence existed that showed Plaintiff had been the victim of an assault, not the perpetrator.

51. The same individuals engaged in this conduct despite actual knowledge and superintendent authority over HINU's due process and Title IX policies that provided for procedural safeguards that would have given Plaintiff the opportunity to be represented and to present evidence showing she had been assaulted.

52. Individual Defendants undertook these actions with the specific intent of violating Plaintiff's Fifth Amendment due process rights.

53.    Individual Defendants also caused Plaintiff's educational and health records to be disclosed to numerous third parties in violation of FERPA, HIPPA, and HINU's Student Handbook regulations delineating students' privacy rights.

54.    Defendant HINU has issued regulations indicating that it submits to Title IX.

55.    Defendant HINU has hired employees to administer Title IX programs and comply with what the law's dictates.

56.    Defendant HINU has levied punishments upon HINU students pursuant to Title IX.

57.    Defendant HINU has made multiple public representations, and continues to make public representations, that it is subject to Title IX and that its students enjoy the benefits and protections of Title IX.

58.    Defendant HINU accepts fees from students derived from federal student loans and grants, thereby making HINU an indirect recipient of federal funding, as well as a direct recipient of federal funding.

59.    Defendants are landlords furnishing housing to its students in competition with private landlords, per *Nero v. Kansas State University*, 861 P.2d 768 (Kan. 1993).

60.    As an invitee upon Defendants' property, Defendants owed Plaintiff a duty to exercise reasonable care under the circumstances to avoid injury to Plaintiff.

61.    As a tenant in a residence hall operated by Defendants, Defendants owed Plaintiff a duty to exercise reasonable care to avoid injury to and to protect Plaintiff against criminal actions by another student.

62.    Defendants had the ability and right and duty to control the conduct of the two football players while on Defendants' premises.

63.     Prior similar acts of assault had been committed upon residents of Defendants' residence halls.

64.     Defendants breached that duty when they permitted two of their football players to sexually assault her.

65.     The assaults were foreseeable because Defendants had reason to anticipate that such assaults and the circumstances of the assault are such that a careful and prudent person would be put on notice of the potential danger.

66.     Plaintiff's assailants were under the control of the Defendants, as they were students, residents and athletes subject to the control of defendants.

67.     Prior to the assaults, Defendants knew:

    a.   That assaults had occurred in Plaintiff's dormitory;

    b.   That her two assailants had engaged in a physical conflict the night of the assault;

    c.   That the two assailants had been drinking excess amounts of alcohol;

    d.   That the two assailants had Plaintiff in their dormitory room after the Defendants' curfew;

    e.   That curfew and alcohol policies had not been enforced regularly;

    f.   Upon information and belief, Defendants knew or had reason to know that the assailants possessed dangerous propensities to assault students.

68.     Plaintiff suffered sexual assaults while on Defendants' property and in their residence hall.

69.     Defendants caused facts about Plaintiff's private life to be publicized when they disclosed her FERPA and HIPPA protected records to third parties, including the criminal defense attorneys representing her assailants at trial before a jury and the general public at large.

70.     Defendants disclosed these records despite the explicit protections provided against disclosure contained in FERPA and HIPPA.

71.     Defendants disclosed these records despite not having received any valid subpoena for the records.

72.     Defendants disclosed these records despite specific *Touhy* regulations requiring a written request for the records that (1) identifies the records, the relevance of the records to the proceedings, the parties to the proceedings and any known relationships to the Agency, demonstrate that the records are not reasonably available from another source, and explain, among other things why the request "[m]aintain impartiality in conducting our business," "[e]nsure that privileged or protected matters remain confidential;" (2) payment for duplication costs, and (3)  sent to the federal employee's office address, the bureau head and the Solicitor's Office. 43 CFR § 2.83.

73.     Defendants disclosed these records in at least one instance without any court order whatsoever that would have permitted their legal disclosure.

74.     The disclosed records contained information concerning the private life of Plaintiff.

75.     Publication of private counseling and health information would be highly offensive to a reasonable person.

76.     The disclosed records were not of legitimate concern to the public – and were actually protected from disclosure.

77.     The disclosures violated her right to privacy.

78.     As a direct result of the acts described in these Background Facts, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress,

embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered, and continues to suffer damage to her reputation, with attendant emotional distress, embarrassment, disgrace, humiliation, and loss of enjoyment of life; has sustained loss of earnings and earning capacity; has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling as well as other economic hardships; and has incurred attorneys fees and costs in defending her rights.

## COUNT I
### (Liability under Title IX – Hostile Educational Environment)

79.     Plaintiff hereby incorporates by reference each and every allegation heretofore pleaded.

80.     Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 and its implementing regulation 34 C.F.R Part 106 prohibit discrimination based on sex and prohibit retaliation against any individual who has made a complaint, testified, or participated in any manner in an investigation into alleged noncompliance with Title IX. *See* 34 C.F.R. § 100.7(e).

81.     Plaintiff is a member of a protected class.

82.     Plaintiff suffered discrimination and harassment on the basis of her gender when:

    a.  She was sexually assaulted by two HINU football players at a HINU dormitory;

    b.  HINU administrators caused a baseless Title IX claim to be made against her;

    c.  HINU effectively expelled her without following its own policies or providing due process on the basis of a baseless Title IX complaint.

83.     Defendants had actual knowledge that Plaintiff had been sexually harassed and discriminated against, in that:

a. HINU administrators with authority to take corrective actions knew that high-level HINU administrators had caused a baseless Title IX complaint to be filed against her;

b. HINU administrators with authority to take corrective actions knew that high-level administrators had expelled Plaintiff without following HINU policies and without providing due process;

c. HINU administrators with authority to take corrective actions knew that she had been sexually assaulted;

d. HINU administrators with authority to take corrective actions knew Plaintiff was at risk of being assaulted.

84. Defendants were deliberately indifferent to harassment Plaintiff suffered, in that:

a. HINU administrators intentionally caused a baseless Title IX complaint to be filed against her;

b. HINU administrators expelled her without due process;

c. HINU administrators withdrew its previously provided support staff dedicated to helping Plaintiff through school as she fulfilled her public duty to testify against the two HINU football players;

d. HINU administrators knew that its curfew policies and policies against alcohol consumption had not been effectively enforced prior to Plaintiff's assaults, and were not being effectively enforced the night Plaintiff was raped;

85. Defendants' conduct is prohibited by Title IX.

86.    The harassment was unwelcome, severe, pervasive and objectively offensive and deprived Plaintiff of access to the educational benefits and opportunities Defendants' offered, including:

a.    She was raped by two HINU football players in a HINU dormitory;

b.    As a result, Plaintiff developed physical/psychological issues that prevented her from fully participating in HINU's educational opportunities;

c.    Defendants caused a baseless Title IX complaint to be made against her;

d.    Defendants expelled her from school without due process;

e.    Defendants banned her from campus and her residence hall without due process;

f.    Defendants then constructively expelled her in order to avoid post-decisional due process for Plaintiff;

g.    Defendants removed prior accommodations and support services offered to the Plaintiff following the rapes she suffered at HINU.

87.    The harassment had the systematic effect of depriving Plaintiff of access to educational benefits or opportunities.

88.    Furthermore, Defendants deliberately failed to supervise and train employees that had the means and authority to stop the rapes Plaintiff experienced and stop the subsequent expulsion and campus ban.

89.    Defendants had actual knowledge that HINU's policies for curfew and prohibiting alcohol were not effectively enforced and were not being effectively enforced the night of Plaintiffs' assaults.

90.    Defendants' corrective or preventive measures regarding Plaintiff's report of sexual harassment were unreasonable or inadequate.

91.     Defendants' indifference and resulting inaction was wanton, willful and in reckless disregard and neglect of Plaintiff's rights, safety and well being.

92.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, diminished future earning potential and out-of-pocket costs.

93.     Plaintiff has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy and counseling as well as other economic hardships.

## COUNT II
### (Liability under Title IX - Retaliation)

94.     Plaintiff hereby incorporates by reference each and every allegation heretofore pleaded.

95.     The Supreme Court has recognized a cause of action for Title IX retaliation in *Jackson v. Birmingham Bd. of Ed.*, 544 US 167 (2005).

96.     In its guidance to colleges and universities, the United States Department of Education, Office for Civil Rights sends a "Dear Colleague" letter to institutions such as HINU. In its April 24, 2015 Dear Colleague letter, the Department of Education reminded recipients that retaliation under Title IX is unlawful:

> Title IX makes it unlawful to retaliate against individuals… not just when they file a complaint alleging a violation of Title IX, but also when they participate in a Title IX investigation, hearing, or proceeding, or advocate for others' Title IX rights. Title IX's broad antiretaliation provision protects [University employees] from discrimination, intimidation, threats, and coercion for the purpose of interfering with the performance of their job responsibilities.

http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201504-title-ix-coordinators.pdf

97.     Plaintiff engaged in protected Title IX activity when she reported her two rapes at HINU to HINU administrators, and when she herself became the subject of a baseless Title IX complaint filed at the urging of Defendants' administrators.

98.     Defendants retaliated against Plaintiff when they:

    a.  Caused a baseless Title IX complaint to be filed against Plaintiff prior to the first criminal trial against the former HINU football player;

    b.  Evicted and expelled Plaintiff prior to the criminal trial against the former HINU football player without due process;

    c.  Constructively expelled her in order to avoid post-decisional appellate rights;

    d.  Ordered HINU support staff to stop all contact with her;

    e.  Disclosed her FERPA and HIPPA protected student records without due process, notice to Plaintiff, compliance with federal regulations, and in direct violation of federal law, to the defense attorney for the former HINU football player charged with raping her.

99.     Defendants were aware of their own retaliatory conduct against Plaintiff, as the retaliatory conduct was carried out by and at the direction of the Title IX administrator and university president.

100.    Defendants had the authority to stop themselves from retaliating against her.

101.    Because Defendants' retaliatory acts occurred at the hands of the highest-level HINU administrators, the actions of the Defendants' administrators should be attributed to HINU itself.

102.    The retaliatory acts directly harmed Plaintiff, deprived her of access to educational opportunities, and violated her Constitutional rights and right to privacy.

103. The retaliation Plaintiff suffered was motivated by her protected activity as shown by:

    a. The retaliatory conduct came immediately after the protected activity;

    b. The same HINU administrators involved in the protected activity were involved in the retaliatory conduct;

    c. Defendants' administrators possessed actual knowledge and were well-acquainted with Plaintiff's rapes and subsequent struggles in school during the impending criminal trials;

    d. The same administrators caused a baseless Title IX complaint to be filed against her despite having photographic evidence of substantial bruising as a result of the complaining male student's conduct;

    e. The same administrators caused her to be expelled without due process shortly before the criminal trials of the two former HINU football players;

    f. The same administrators caused her private FERPA and HIPPA protected records to be disclosed to her attacker's criminal defense attorney.

    g. The same administrators retaliated against the HINU employee who told them Plaintiff had Title IX and due process rights they were violating.

104. Defendants committed these acts in full knowledge of what they were doing and in deliberate indifference to the Title IX rights Plaintiff possessed.

105. As a direct and proximate result of the defendants' wrongful conduct, Plaintiff has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, diminished future earning potential and out-of-pocket costs.

106.    Plaintiff has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy and counseling as well as other economic hardships.

### COUNT III
### *(Bivens* – Fifth Amendment Violation-Due Process)
### (Against Individual Defendants)

107.    Plaintiff hereby incorporates by reference each and every allegation heretofore pleaded.

108.    In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the U.S. Supreme Court authorized a private cause of action for damages against federal agents who commit Constitutional violations.

109.    The Fifth Amendment provides for due process rights for individuals.

110.    At all times relevant, Plaintiff possessed a clear property interest in her education.

111.    At all times relevant, Plaintiff's due process rights pursuant to the Fifth Amendment were clearly established as a HINU student under HINU policies and Department of Interior regulations providing for due process for students.

112.    At all time relevant, Individual Defendants were acting under color of federal law and within the scope of their employment.

113.    At all times relevant, Individual Defendants had the authority to stop the denial of Plaintiff's due process rights from occurring.

114.    At all times relevant, Individual Defendants had superintendent authority over the policies providing Plaintiff's due process rights.

115.    Individual Defendants expelled Plaintiff and banned her from campus without following any of HINU's due process procedures prior to expulsion, including providing

Plaintiff no opportunity for a hearing to contest their decision to expel her prior to her expulsion, put on witnesses, or offer evidence in her favor.

116.    Individual Defendants deprived Plaintiff of her due process rights despite having actual knowledge that she had been the victim and had not engaged in conduct warranting expulsion, a campus ban, a suspension, or a constructive expulsion by forcing her to choose between withdrawal and expulsion without due process.

117.    Individual Defendants deprived Plaintiff of her due process rights by not conducting an investigation into the baseless accusation against her.

118.    Individual Defendants deprived Plaintiff of her due process rights by causing a baseless accusation to made against her.

119.    Individual Defendants also deprived Plaintiff of her due process rights by banning her from campus and by instructing her support staff not to communicate with her, thereby frustrating any opportunity she would have had to exercise a post-decisional appellate right.

120.     Individual Defendants acted with deliberate indifference to Plaintiff's rights.

121.    Individual Defendant's indifference and resulting action was wanton, willful and with reckless disregard and neglect of Plaintiff's rights, safety and well being, justifying the imposition of punitive damages.

122.    As a direct and proximate result of Individual Defendant's wrongful conduct, Plaintiff has sustained or will sustain medically significant emotional distress, expenses for psychological treatment, therapy and counseling as well as other economic hardships, lost earning potential and missed educational opportunities.

## COUNT IV
### *(Bivens* – Fifth Amendment Violation-Equal Protection)
### (Against Individual Defendants)

123.    Plaintiff hereby incorporates by reference each and every allegation heretofore pled.

124.    In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the U.S. Supreme Court authorized a private cause of action for damages against federal agents who commit Constitutional violations.

125.    The Fifth Amendment provides for equal protection under the laws for individuals.

126.    At all times relevant, Plaintiff was a member of a suspect class by virtue of her gender.

127.    In addition to being a member of a suspect class, Plaintiff was also a member of a "class of one," in that Individual Defendants specifically targeted her for unfair and unequal treatment.

128.    Individual Defendants' expulsion, campus ban, deprivation of support services and disclosure of her protected records were the result of enforcing policies unequally on the basis of Plaintiff's gender and lacked any rational basis

129.    Individual Defendants treated her differently than other students under the law, in that:

    a.    They had evidence that the male student had injured Plaintiff;

    b.    They did not expel, suspend or ban the male student;

    c.    Individual Defendants specifically singled Plaintiff out for selective enforcement of a purported Title IX scheme;

d.  Individual Defendants targeted Plaintiff for punishment due to her gender and status as a rape victim struggling to function as a HINU student under the stress of having to testify in criminal trials against the former HINU football players.

130.  The different treatment lacked any rational basis.

131.  At all times relevant, Plaintiff's due process rights pursuant to the Fifth Amendment were clearly established as a HINU student under HINU policies and Department of Interior regulations providing for due process for students, including a hearing prior to expulsion.

132.  At all time relevant, Individual Defendants were acting under color of federal law and within the scope of their employment.

133.  At all times relevant, Individual Defendants had the authority to stop the unequal protection under the law being afforded the Plaintiff.

134.  Individual Defendants were deliberately indifferent to the unequal protection suffered by Plaintiff.

135.  Individual Defendants acted with deliberate indifference to Plaintiff's rights.

136.  Individual Defendant's indifference and resulting action was wanton, willful and with reckless disregard and neglect of Plaintiff's rights, safety and well being, justifying the imposition of punitive damages.

137.  As a direct and proximate result of Individual Defendant's wrongful conduct, Plaintiff has sustained or will sustain medically significant emotional distress, expenses for psychological treatment, therapy and counseling as well as other economic hardships, lost earning potential and missed educational opportunities.

## COUNT V
### (*Bivens* – Fourth, Fifth and Fourteenth Amendment Violation-Invasion of Privacy)
### (Against Individual Defendants)

138.    Plaintiff hereby incorporates by reference each and every allegation heretofore pleaded.

139.    In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the U.S. Supreme Court authorized a private cause of action for damages against federal agents who commit Constitutional violations.

140.    Plaintiff possessed a clearly defined privacy interest in her HINU records as stated under FERPA and HIPPA. Plaintiff possessed a clearly defined individual interest in avoiding disclosure of personal matters and an assurance of confidentiality with respect to her personal information retrained by HINU.

141.    Individual Defendants had actual knowledge that Plaintiff possessed a privacy interest and right to her student records.

142.    Individual Defendants violated her federally protected privacy interests by deliberately releasing these records to third parties.

143.    Individual Defendants acted with deliberate indifference to her privacy rights, as evinced by:

    a.  They also did not comply with their own Agency's *Touhy* regulations;

    b.  They were under no order of court or subpoena to produce the records, and therefore produced them voluntarily;

    c.  They never provided notice to Plaintiff;

    d.  They provided the records in direct aid of the Plaintiff's attacker;

e. They were prepared to repeat the foregoing acts a second time but for the intervention of Adams, whom they had already retaliated against.

144. Individual Defendants' disclosures of Plaintiff's protected health and educational records advanced no compelling state interest.

145. Individual Defendants' disclosures of Plaintiff's protected health and educational records was not accomplished "in the least intrusive manner."

146. Plaintiff possessed a legitimate expectation that her educational and/or health records would remain confidential while in HINU's possession.

147. Individual Defendants acted with deliberate indifference to Plaintiff's rights.

148. Individual Defendant's indifference and resulting action was wanton, willful and with reckless disregard and neglect of Plaintiff's rights, safety and well being, justifying the imposition of punitive damages.

149. As a direct and proximate result of Individual Defendant's wrongful conduct, Plaintiff has sustained or will sustain medically significant emotional distress, expenses for psychological treatment, therapy and counseling as well as other economic hardships, lost earning potential and missed educational opportunities, and privacy violations.

## COUNT VI
### (*Disability Discrimination* – Rehabilitation Act of 1973)

150. Plaintiff hereby incorporates by reference each and every allegation heretofore pleaded.

151. Plaintiff has serious medical conditions that are disabilities as defined by the Rehabilitation Act of 1973, in that each of these conditions are physical or mental impairments that substantially limit Plaintiff in the major life activities of concentrating, and thinking.

152.     Plaintiff is a disabled person within the meaning of the Rehabilitation Act and is a qualified person with a disability, in that, at all pertinent times, Plaintiff had physical or mental impairment that limits one or more major life activities, and that she was capable of performing the essential functions of her school programs with reasonable accommodation.

153.     At all pertinent times, Defendants were aware of Plaintiff's disabilities and their effect on her athletic and academic performance.

154.     At all pertinent times, Defendants were aware that Plaintiff had requested accommodations for her disabilities.

155.     At all pertinent times, Defendants were aware that their own failure to maintain a safe campus caused Plaintiff's disability to develop.

156.     Defendants failed to engage in an interactive process and failed to provide reasonable accommodation and withdrew previously provided accommodations.

157.     Defendant discriminated against Plaintiff because of her disability when it withdrew previously provided accommodation, excluded her from campus housing, expelled her, constructively expelled her, forbade support staff from speaking with her, and denied her access to all HINU educational opportunities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court conduct a jury trial on her claims, enter judgment in her favor in an amount above the jurisdictional amount and against Defendants, grant such declaratory and injunctive relief as is necessary and appropriate to remedy the wrongs alleged herein; award Plaintiff actual damages, compensatory damages, punitive damages, reasonable attorneys' fees and expenses; and grant such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable by law.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates Kansas City, Kansas as the place of trial for this matter.

Respectfully submitted,

BROWN & CURRY, LLC

/s/Dan Curry
Dan Curry, KS #22750
Sarah Brown, KS #12130
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9596 (FAX)
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF